UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TERRIS R. JONES SR.,

    Plaintiff,

v.

LAS VEGAS VALLEY WATER DISTRICT, *et al*.,

    Defendants.

Case No. 2:11-CV-00435-KJD-PAL

**ORDER**

    Presently before the Court is the Motion for Summary Judgment of Defendants Las Vegas Valley Water District, Pat Mulroy, Patricia Maxwell, Alan Schmidt, Juan Sanjurjo, Richard Tritley, and Richard Fox (collectively "Defendants") (#36). Plaintiff Terris Jones filed a response in opposition (#47) to which Defendants replied (#48).

    Additionally, before the Court is Plaintiff's Second Motion for Partial Summary Judgment (#46). Defendants filed a response in opposition (#49) to which Plaintiff replied (#50).

I. Background and Procedural History

    Plaintiff is currently a security officer at Las Vegas Valley Water District ("LVVWD"), where he has been employed since February 2007. On August 6, 2010 Plaintiff filed a Charge of

Discrimination with the Equal Employment Opportunity Commission ("EEOC"). This charge alleged race discrimination and retaliation arising out of a prior charge filed by Plaintiff on April 9, 2010. On March 16, 2011 Plaintiff received a right to sue letter from the U.S. Department of Justice. On March 24, 2011 Plaintiff filed his Complaint alleging discrimination and retaliation by LVVWD and his co-workers.

    A.  First Incident

The first incident arose out of a series of emails that were exchanged between May and July of 2010. On May 9, 2010 Plaintiff sent an email to his supervisor, Alan Schmidt ("Schmidt"), and the Human Resource Director, Patricia Maxwell ("Maxwell"), informing them that he had "been feeling fearful for [his] life here at this job, because of what has happened to [him] by all the people that has had anything to do with, what has happened to [him]. With respect to the discriminative acts that were perpetrated against [him] by persons at this job." (sic.)

On May 10, 2010 Maxwell sent an email to Plaintiff telling him to contact her immediately if he had been subject to threats or threatening behavior. Plaintiff did not respond to the email. At his deposition, Plaintiff stated that he did not respond because he had not been threatened.

On May 11, 2010 Plaintiff sent the same email claiming that he had "been feeling fearful for [his] life" to the General Manager of LVVWD, Pat Mulroy ("Mulroy"). Mulroy did not respond to Plaintiff's email. At his deposition Plaintiff admitted that even if Mulroy had contacted him, he would not have responded because he had not been threatened.

On July 13, 2010 Plaintiff wrote a letter to Maxwell stating he "emailed [H.R.] concerning feeling fearful and working in a 'hostile work environment and/or atmosphere'" and cited the above emails. Plaintiff then informed Maxwell he would be taking July 14th-16th off to "bring his emotional distress under control." LVVWD permitted Plaintiff to take the requested days off, and Maxwell responded to Plaintiff's letter informing him "that the investigation [H.R.] completed regarding [his] original complaint did not indicate any intention that would manifest itself in a physical action/attack." Maxwell reiterated that LVVWD does not tolerate threats and invited

Plaintiff to contact her if Plaintiff received "any threats or [was] the recipient of any threatening behavior."

On July 22, 2010 Plaintiff wrote a letter to Maxwell about the alleged threats indicating that LVVWD was negligent because it "tolerated the egregious behavior." Plaintiff stated, "[n]o one can predetermine anyone's actions at any time, if so, why didn't [H.R.] predetermine the perpetrators egregious behavior in [Plaintiff's] first complaint so [Plaintiff] would not have had to undergo the emotional distress [he has] suffered." However, Plaintiff admitted is his deposition that there was no threatening behavior, and that his concern was not a threat on his life. Instead, Plaintiff's issue was that the persons against whom he made prior complaints were still in place.

On July 28, 2010 Plaintiff sent emails to Schmidt and Maxwell complaining that on July 24, 2010 co-worker Richard Fox ("Fox"), treated him disrespectfully. Plaintiff now contends that at that time, he made LVVWD aware that Fox called him the "N-word." However, at his deposition Plaintiff admits that he did not actually make that claim in the email. Schmidt tried to discuss the email with Plaintiff and asked him what was said. Plaintiff would not answer and told Schmidt that if he placed the question in writing he would respond. At Plaintiff's request, Maxwell emailed Plaintiff asking him to describe the interaction with Fox. Plaintiff did not respond to Maxwell's email and filed his complaint with the EEOC.

B. Second Incident

On January 22, 2011, five months after Plaintiff filed his complaint based on the first incident with the EEOC, Plaintiff emailed Schmidt about a shift assignment issue. Plaintiff believed he should be working in the security yard, while officers Juan Sanjurjo ("Sanjurjo") and Fox believed that he should be in the security center. Plaintiff ended his email to Schmidt with "[t]his further appears to be retaliation."

That same day Schmidt responded to Plaintiff's email explaining that because of the new rotation schedule there was confusion as to who would be on what assignment. Schmidt told Plaintiff that he should have been working in the field and informed Plaintiff he would email Sanjurjo and

3

Fox to clear up the confusion. Further, Schmidt stated, "I am unclear on the exact nature of your retaliation claim. If anything was said or done to make you feel this then please document this or speak to Pat Maxwell in H.R." On January 24, 2011 Maxwell also responded to Plaintiff's email complaining about retaliation and requested that Plaintiff speak to her if he disagreed that the incident was other than a mix-up. Plaintiff did not respond.

II. Defendant's Motion for Summary Judgment

### A. Legal Standard for Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by," citing to documents, electronically stored information, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. *Matsushita Elec. Indis. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. However, the nonmoving party may not rest upon mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F. 3d 337, 345 (9th Cir. 1995). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F. 3d 1054, 1061 (9th Cir. 2002).

Plaintiff is proceeding *pro se*. *Pro se* litigants are not held to the same standard as admitted or bar licensed attorneys. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). Pleadings by *pro se* litigants,

4

regardless of deficiencies, should only be judged by function. *Id*. Although the Court must construe the pleadings liberally, "*[p]ro se* litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) ("*[P]ro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record.").

### B.  Title VII Claims

Title VII states, "[i]t shall be unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race… or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals race…" 42 U.S.C. § 2000E(2)(a)(1)-(2). For Title VII purposes, employer is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees…" *Id*. at § 2000E(b). To seek relief under Title VII a plaintiff must exhaust his administrative remedies by filing a Charge with the EEOC or corresponding state agency before filing suit. 42 U.S.C. § 2000e(5)(b).

#### 1.  Claims Against Individuals

Title VII claims can only be asserted against employers, not individual employees. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993). Even if Plaintiff seeks relief based on a state tort law, he cannot plead around Title VII's ban on individual liability. *See Christian v. Nevada Public Works Board*, 2009 WL 1407990 (D. Nev. 2009). Here, Plaintiff raises claims against individual LVVWD employees in each cause of action. It is undisputed that Plaintiff's causes of action allege a retaliatory or discriminatory act under Title VII. Accordingly, summary judgment is granted in favor of the individual employees.

#### 2.  Race Discrimination Claim

To claim employment discrimination under Title VII a plaintiff has the burden of showing:

5

(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 US 792, 37 L Ed 2d 668, 93 Ct 1817 (1973).

For Title VII purposes, only non-trivial employment actions that deter reasonable employees from complaining about Title VII violations constitute adverse employment actions. *Brooks v. City of San Mateo*, 229 F. 3d 917, 928 (9th Cir. 2000). These types of actions include termination, dissemination of negative employment reference, issuance of a negative performance review or a refusal to consider an employee for promotion. *Id*. An action other than a termination or demotion requires some kind of meaningful change in work assignment. *See Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002). Additionally, an employer's action must be "final or lasting" to be considered an adverse employment action. *Id*. at 929-930.

The parties do not dispute that Plaintiff is a member of a protected group and is qualified for the job. However, Defendants argue that Plaintiff has not suffered an adverse employment action. Plaintiff provides no evidence that he lost his position, was demoted, failed to receive a due promotion, had his rate of pay changed, or had any of his benefits of employment at LVVWD altered. Finally, the only circumstance that could possibly support an inference of discrimination is Plaintiff's allegation that Fox treated him disrespectfully and used the "N-word." However, since Fox is a co-worker and not a supervisor, Fox's actions are not imputed to the employer. *See Miller*, 991 F.2d at 587-88. Accordingly, Plaintiff's race discrimination claim fails to survive summary judgment.

        3.    Racial Harassment/Hostile Work Environment Claim

To establish an actionable claim for hostile work environment a plaintiff must prove: "(1) that he or she was subjected to verbal or physical conduct of a harassing nature, (2) that the conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment." *Pavon v. Swift Transp. Co. Inc.*, 192 F.3d 902, 908 (9th Cir. 1999) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57,

67, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986)). Courts have held that the conduct must involve "discriminatory intimidation, ridicule, [and/or] insult." *Id*. An employer will be liable for harassment by a co-worker if the employer does not exercise reasonable care to prevent the harassing behavior. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807-8 (1998)

Plaintiff wrote to Maxwell that he "emailed [H.R.] concerning feeling fearful and working in a 'hostile work environment and/or atmosphere.'" However, Plaintiff refused to provide any details or work with LVVWD when it attempted to resolve the issues Plaintiff raised in his complaints. Plaintiff also alleges Fox directed the N-word towards him once. However, Plaintiff did not report this conduct at the time it is alleged to have occurred and admits in his deposition that"[he] heard [Fox] specifically say it, but [he did not know] if [Fox] was talking to [him] or not." Fox is not a supervisor and there is no evidence that anyone at LVVWD was aware of the alleged use of the word. Finally, the allegations are not sufficiently severe or pervasive as to alter the terms and conditions of employment and create an abusive working environment. At most, the allegations concern stray remarks, which are not actionable. *See Price Water House v. Hopkins*, 490 U.S. 228, 551 (1989). Accordingly, Defendants are entitled to summary judgment on the hostile work environment claim.

### 4. Claim for Retaliation

To establish a claim for retaliation a plaintiff must show that "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F. 3d 1234, 1240 (9th Cir. 2000).

#### i. First Incident

It is undisputed that Plaintiff engaged in a protected activity by making a Charge of Discrimination to the EEOC. However, as discussed supra, Plaintiff has not been subject to an adverse employment action after he filed the EEOC Charge. Accordingly, Plaintiff's retaliation claim based on the first incident cannot survive summary judgment.

ii.   Second Incident

Plaintiff alleges that five months after filing the EEOC Charge, Fox and Sanjurjo discriminated and retaliated against him by placing him in the security center for a shift instead of the field. Plaintiff has provided no evidence that this was anything more than a mistake caused by confusion and admitted in his deposition that the situation was resolved to his satisfaction.

Further, when asserting claims that do not appear in the EEOC Charge the plaintiff must demonstrate that the new claims are like or reasonably related to the allegations of those in the EEOC Charge. *Green v. Los Angeles County Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989). If the allegations are not like or reasonably related the court should not consider them. *Id*. The second incident took place five months after the EEOC Charge and Plaintiff provides no evidence demonstrating a relationship between the schedule mix-up and the allegations of the EEOC Charge, other than Plaintiff's characterization of the mix-up as "retaliation."

Even if the Court were to find that the charge is related to the EEOC Charge, Plaintiff has not demonstrated an adverse employment action. Maxwell responded to Plaintiff's email that stated "[t]his further appears to be retaliation," asking for clarification. Plaintiff did not respond. In his deposition, Plaintiff indicated that Schmidt's response was adequate. Accordingly, Defendants are entitled to summary judgment on the retaliation claim.

III. Plaintiff's Second Motion for Partial Summary Judgment

Plaintiff previously moved for summary judgment.  The Court denied the motion (#44). Plaintiff has again moved for summary judgment (#46).  Like his previous motion, this motion fails to comply with even the most generous readings of Fed. R. Civ. P. 56 and Local Rules 7-2(a) and 56-1. Plaintiff's motion lacks a statement of facts, supporting points and authorities, and other information that would supply a basis for granting summary judgment as required by the federal and local rules. *See Id*. In his reply (#50) in support of his motion, Plaintiff attempts to redress these defects. However, the reply contains only conclusory assertions and lacks authority, affidavits, and documentary evidence showing that he is entitled to summary judgment.  Further, Plaintiff's

assertion that the Court made an untrue statement in its Order (#44) denying Plaintiff's pervious motion for summary judgment is manifestly false. Plaintiff's Motion is defective in both form and substance. Accordingly, Plaintiff's Motion for Partial Summary Judgment is denied.

IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#36) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Summary Judgment (#46) is **DENIED**.

DATED this 28th day of June 2012.

_____
Kent J. Dawson
United States District Judge